UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES THOMAS,

    Plaintiff,

                                                Case No. 09-14629
-vs-                                          HON. AVERN COHN

CITY OF DETROIT,

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

**I. INTRODUCTION**

This is an age discrimination case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq, with a pendant state law claim under the Elliot-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 et seq. Plaintiff James Thomas (Thomas) is a former mechanic for defendant, the City of Detroit, in the Detroit Department of Transportation (DDOT). After suffering a non work related injury and exhausting his short term disability benefits, Thomas was denied long term disability benefits by DDOT. Thomas later retired from DDOT.

Thomas asserts that DDOT's denial of long term disability benefits violates the ADEA and ELCRA because it discriminates on the basis of age and forced his retirement. DDOT asserts that the policy does not offend the ADEA or ELCRA because eligibility for long term disability turns on pension status, which DDOT claims is lawful under the ADEA as interpreted by the Supreme Court.

Now before the Court is Thomas' motion for partial summary judgment on liability. For the reasons that follow, the motion will be granted.

## II. FACTS

The facts are from the parties' papers and exhibits, as follows.

### A.

Thomas began working at DDOT on October 15, 1984. In March, 2008, Thomas suffered serious injuries, including broken wrists and ankles, in a non work related automobile accident. After exhausting his short term disability benefits, Thomas applied for long term disability benefits in July, 2008. When he applied, Thomas was 63 years of age and had 24 years of service at DDOT.

Following his application, DDOT denied Thomas' request for long term disability benefits. DDOT's denial letter stated, "A review of your file shows that you have reached the age of 63 years on 5/23/2008. Therefore, you will not be entitled to [long term disability] benefits." (Doc. 10-2). In May, 2009, Thomas filed an application for retirement and is presently retired.

### B.

DDOT's long-term disability policy, agreed to in the collective bargaining agreement between the City of Detroit and AFSCME Local 312, of which Thomas was a union member, states "Extended Disability Benefit Insurance shall be provided while an employee is insured for Sickness and Accident Insurance, but not beyond normal minimum retirement date or if an employee does not qualify for a pension, age 62." (Doc. 12-2 p. 38).

The City of Detroit's Pension Ordinance, which governs DDOT employees, defines different levels of pension eligibility based on age and years of service. (Doc. 10-6). Under the ordinance, Thomas was eligible to retire on the date that he applied for long term disability benefits because he was 63 and had 24 years of service.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

### IV.  THE LAW

#### A.

A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Id.

(quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc)) (internal quotation marks omitted).

Particularly, the ADEA makes it unlawful for an employer "to discharge" an employee or "otherwise discriminate" on the basis of age with respect to an employees "compensation, terms, conditions or privileges of employment." 29 U.S.C. § 623(a). Unlawful activity includes actions that "tend to deprive any individual of employment opportunities or otherwise adversely affect his status." Id.

Further, under the ADEA, bona fide employee benefits plans are partially excepted from the general rule. 29 U.S.C. § 623(f)(2). Particularly, an employer may discriminate on the basis of age "to observe the terms of a bona fide employee benefit plan," such as a voluntary early retirement plan. Id.

However, a benefit plan that forces retirement violates the ADEA. Id. "Notwithstanding [the exemption for discrimination pursuant to a bona fide benefit plan] no . . . employee benefit plan shall require or permit the involuntary retirement of any individual . . . because of the age of such individual." 29 U.S.C. § 623 (f)(2); see also Betts v. Hamilton Co., 897 F.2d 1380, 1381 (6th Cir. 1990), cert. denied, 498 U.S. 963 (1990). In other words, if an employee is subject to involuntary retirement, the exemption for age-related discrimination subject to a bona fide benefit plan does not apply. Id. To establish an involuntary retirement violation under the ADEA, a plaintiff must show that age was a "determining' factor" in the employer's policy. Betts, 897 F.2d at 1383; see also EEOC v. Chrysler, 733 F.3d 1183, 1186 (6th Cir. 1984).

B.

"The ELCRA prohibits 'discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age[.]'" Geiger, 579 F.3d at 626 (quoting MCL § 37.2202(1)(a)). ELCRA claims are analyzed under the same standards as federal ADEA claims. Geiger, 579 F.3d at 626.

**V. ANALYSIS**

A.

Thomas claims DDOT's policy violates the ADEA and ELCRA because, without the option of long term disability benefits, he was forced to retire. Relying on Betts v. Hamilton Co., supra, Thomas claims that if he would not have been 63 when he suffered his injuries, he would have had the option to receive benefits. In response, DDOT first claims that Thomas' long term disability benefits were denied based of his pension status and not his age, which DDOT claims is lawful under Kentucky Retirement Systems v. EEOC, __ U.S. __, 128 S.Ct. 2361 (2008). Thomas is correct.

In Kentucky Retirement Systems, 128 S.Ct. at 2364, plaintiff alleged an age-related disparate treatment ADEA violation because a Kentucky pension plan provided additional pension disability benefits to hazardous workers who became disabled prior to being retirement eligible, which was different than the "normal retirement benefits" that were provided to workers who became disabled after becoming retirement eligible. The Supreme Court held that this was not an ADEA violation, finding that the ADEA treats pension plans "somewhat more flexibly and leniently in respect to age." Id. at 2367 (citing 29 U.S.C.A. § 623(l)(1)(A)(i) (Supp. 2007) (allowing pension benefits to turn

on age)). The Supreme Court further noted that the pension plan at issue provided pension disability benefits identically to all hazardous workers except that it imputed additional years of service to disabled individuals, in order to allow workers who became disabled prior to being retirement eligible the option of retiring by giving them retirement eligible status. Id. at 2368. Thus, the Supreme Court found that plaintiff failed to make out a prima facie disparate treatment claim because the plan's legitimate objective – to provide each disabled worker with a sufficient retirement benefit – was what "actually motivated" the plan, and not age. Id. at 2369.

Kentucky Retirement Systems is distinguishable from Thomas' case because, as an initial matter, the plaintiff in Kentucky Retirement Systems was not asserting an ADEA violation on grounds of involuntary retirement, as is the case here. Further, the plan at issue in Kentucky Retirement Systems was a pension plan, not a disability plan. Also, in Kentucky Retirement Systems, the plaintiff's claim related to differences in the amount of pension benefits pre-retirement disabled employees received compared to the amount of pension benefits post-retirement disabled employees received. Here, Thomas is completely excluded from a benefits plan, evidenced by DDOT's policy, which states an employee is not eligible for long term disability "beyond normal minimum retirement date or if an employee does not qualify for a pension, age 62" (Doc. 12-2 p. 38), and the denial letter that he received from DDOT, which states, "[a] review of your file shows that you have reached the age of 63 years on 5/23/2008. Therefore, you will not be entitled to [long term disability] benefits." (Doc. 10-2). Thus, the facts here are distinguishable from Kentucky Retirement Systems and DDOT's argument is without merit.

Betts v. Hamilton Co., 897 F.2d at 1381, a Sixth Circuit case, is more analogous to the facts here. In Betts, plaintiff became ill and was unable to work. She was advised by her employer that she had two benefit plan options, an unpaid medical leave or a length-of-service retirement. Id. Because she was over 60, the employer plan did not offer plaintiff a third option, i.e., to receive disability benefits, which would have given her the possibility of being recalled as an employee if her condition sufficiently improved. Id. On remand from the Supreme Court on the issue of whether the plan violated the ADEA's involuntary retirement provision, the Sixth Circuit granted plaintiff's motion for summary judgment, finding a violation on the grounds that "[b]ecause of her age, plaintiff was not entitled to disability benefits." Id. In reaching the decision, the court also relied on Trans World Airlines v. Thurston, 469 U.S. 111, 124 (1985), in which the Supreme Court found an ADEA violation when because of their age some pilots were not entitled to "bumping" privileges, and EEOC v. Chrysler, supra, in which the Sixth Circuit found a violation because workers were not given the option of taking layoff status because of their age.

Kalvinkas v. California Institute of Technology, 96 F.3d 1305 (9th Cir. 1996), is also instructive. In Kalvinkas, the Ninth Circuit held a plaintiff employee was entitled to summary judgment on grounds that the employer violated the ADEA's involuntary retirement provision when the employer off-set the employee's long term disability benefits with pension benefits that the employee could only receive by retiring. Id. at 1308. The Ninth Circuit found no distinction from a "reduction" in benefits compared to "complete exclusion" of benefits, stating "the coercive effect on [the employee] would have been no greater had he been excluded from participation in the disability plan

altogether, than it was in fact by a 'mere reduction' in his disability benefits to zero." Id. at 1308.

Here, like <u>Bell</u> and <u>Kalvinkas</u>, DDOT's long term disability policy unlawfully excludes retirement eligible employees who wish to continue working once recovered from having a choice between retirement and receiving long term disability benefits. Thus, as the Supreme Court held in <u>Thurston</u>, the Sixth Circuit held in <u>Bell</u> and <u>Chrysler</u>, and the Ninth Circuit held in <u>Kalvinskas</u>, because DDOT's disability plan completely excludes pension eligible employees from a benefit, which has the effect of forcing employees to retire, the policy violates the ADEA's involuntary retirement provision.

Moreover, DDOT's long term disability policy and DDOT's benefits letter show that age was a determining factor in the denial of long term disability benefits. Thus, Thomas has met his burden to prove that DDOT's policy violates the ADEA. <u>See</u> <u>Betts</u>, <u>supra</u>, at 1383; <u>see also</u> <u>Chrysler</u>, <u>supra</u>, at 1185-96.

B.

DDOT next argues that its disability benefits policy does not violate the ADEA's involuntary retirement provision because the policy does not contain a mandatory retirement clause, relying on a Third Circuit case, <u>EEOC v. Westinghouse Elec. Corp.</u>, <u>supra</u>. DDOT's reliance is misplaced.

In <u>Westinghouse,</u> the Third Circuit held that an unpaid layoff without severance pay plan for retirement eligible employees did not amount to involuntary retirement because "continued work [due to layoff] was not an option for any of the affected employees, and the employee's layoff status was unrelated to age." 907 F.2d at 1363. Notably, however, the Third Circuit next relied on the fact that the employer had

8

updated its severance policy since the initial complaint was filed.  Id.  Particularly, the employer removed the severance pay exclusion provision and the updated provision gave the employees a choice between retirement benefits and severance pay.  Id.  As the Third Circuit stated, "[w]e believe that a plan which provides laid-off employees with such a choice cannot be said to require or permit involuntary retirement within the meaning of the ADEA."  Id.

Westinghouse is instructive for the proposition that the ADEA's involuntary retirement has been held to turn on factors such as whether continued work is an option and whether a policy has been updated to give employees a choice between retiring and accepting a benefit, as opposed to simply excluding a retirement eligible employee from a benefit completely.  Further, in EEOC v. Chrysler, supra, the Sixth Circuit held that the ADEA's involuntary retirement provision was violated when certain older workers were not given the option of layoff status with recall rights because of age and years of service.

Here, Thomas was not permanently disabled and there is no evidence to rebut his contention that he planned to return to work.  Unlike the employee in Westinghouse, continued work was an option for Thomas.  Further, like Chrysler, DDOT's policy does not offer employees a choice between receiving benefits and retiring.

## VI.  CONCLUSION

Thus, for the reasons stated above, DDOT's arguments lack merit and Thomas is entitled to partial summary judgment on liability.  Further, because an ECLRA violation is analyzed under ADEA standards, DDOT's policy also violates the ECLRA.  See

Geiger, supra, at 626. Thomas' motion for partial summary judgment is GRANTED and the case goes forward on the issue of damages.

A status conference is scheduled for **Wednesday, December 15, 2010 at 2:00 p.m.** to chart the future of the case consistent with this opinion.

SO ORDERED.

        S/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: November 5, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 5, 2010, by electronic and/or ordinary mail.

        S/Julie Owens
        Case Manager, (313) 234-5160